IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02432-PAB

DIANNE L. COXEN WILLIAMS,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

This matter is before the Court on plaintiff Dianne L. Coxen Williams' complaint [Docket No. 1], filed on September 6, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On February 2, 2011, plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. at 23. Plaintiff alleged that she had been disabled since November 4, 2009. *Id.* After an initial administrative denial of her claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on July 31, 2012. *Id.* On August 14, 2012, the ALJ denied plaintiff's claim. *Id.* at 34.

The ALJ found that plaintiff had the severe impairments of chronic lower back and left leg pain, status-post lumbar fusion, and morbid obesity. R. at 26. The ALJ found that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, *id.*, and found that plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she should occasionally climb, stoop, crouch, kneel, crawl or push and pull with the lower extremities; and she should avoid temperature extremes and hazards." *Id.* at 27. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff was capable of performing her past relevant work as a bus driver, a bouncer, and a bus monitor. *Id.* at 33.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an

impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to evaluate whether plaintiff's spine impairments meet or medically equal a listed impairment, (2) improperly evaluating medical evidence and medical source opinions, and (3) improperly discounting plaintiff's subjective complaints.

The evidence of record is as follows. In November 2009, plaintiff reported

decreased range of motion of the lumbar spine to her pain management specialist, Dr. Frank Polanco.  R. at 375.  Dr. Polanco cleared plaintiff to perform sedentary work.  *Id.*  At a January 2010 follow-up appointment, Dr. Polanco noted that plaintiff could perform modified work duties, which limited plaintiff to sedentary work and limited lifting to 15 pounds or less.  *Id.* at 367.  Dr. Polanco also prescribed "pool therapy three times a week" and noted that he discussed "manual land therapy" to assist in calming plaintiff's muscle spasms.  *Id.*

In April 2010, an MRI of plaintiff's lumbar spine showed "grade 1 retrolisthesis of L4 over L5 measuring 3 cm secondary to arthropathy of the facet joints."  R. at 360.  As a result of the MRI, Dr. Polanco diagnosed plaintiff with lumbar degenerative disc disease.  R. at 360.  Dr. Polanco advised plaintiff to continue with pool therapy, to use Percocet, Soma, and Flector patches as previously prescribed, to use heat followed by ice on an as-needed basis, and to do "cardiovascular activity to strengthen her core."  *Id.*  Dr. Polanco also referred plaintiff to an orthopedic spine surgeon, Dr. Roger Sung, for evaluation.  *Id.*  In May 2010, plaintiff reported to Dr. Polanco that Dr. Sung evaluated her and recommended surgery.  *Id.* at 355.

In May 2010, Dr. Sung performed an L5-S1 fusion on plaintiff.  R. at 241-242.  At a July 2010 follow-up appointment, plaintiff reported to Dr. Sung that she "really does not have much in the way of back or leg pain."  *Id.* at 298.  Dr. Sung wrote that plaintiff could discontinue using a back brace and could begin physical therapy.  *Id.*  After a September 2010 follow-up, Dr. Sung wrote that "[o]verall, [plaintiff] is doing well" and that x-rays showed good alignment and good positioning of the hardware.  *Id.* at 297.

Plaintiff reported that her back was sore when she stood up straight. *Id.* Dr. Sung noted that plaintiff's "[s]trength [wa]s intact" and that she was "diffusely tender." *Id.* Plaintiff asked about breast reduction surgery to reduce back pain, but Dr. Sung stated that he did not recommend it. *Id.*

In December 2010, plaintiff reported to Dr. Sung that she had begun experiencing pain in her left leg. R. at 296. Dr. Sung noted at this appointment that plaintiff's strength was intact, that there was good overall alignment and good positioning of the hardware, and no evidence of loosening. *Id.* He ordered a new MRI. *Id.* In February 2011, Dr. Sung opined that the MRI showed "no significant nerve compression that would account for [plaintiff's] left leg pain." *Id.* at 295. Dr. Sung noted that he "briefly mentioned chronic pain options like a spinal cord stimulator," but that he "would rather [plaintiff] do what she is doing at this point." *Id.*

In February 2011, plaintiff told Paula Homberger, a physician's assistant who works with Dr. Polanco, that her pain "has gotten up to a 10 on a scale of 0 to 10 on some days." R. at 337. Ms. Homberger advised plaintiff to follow up with Dr. Sung, to continue land and aqua therapy, to continue taking her medications (Percocet and Soma as needed, Lyrica three times a day), and to increase her home exercise program to include greater cardiovascular activity and increased stretches. *Id.* at 338. At a follow-up appointment on February 18, 2011, Ms. Homberger discussed the importance of "increasing the aggressiveness of [plaintiff's] therapy program," told plaintiff that "she needs to increase her stretches and her home exercise program," continued her medications, and discussed increasing her dosage of Lyrica to 100 mg

three times a day. *Id.* at 335. Ms. Homberger placed plaintiff on temporary work restrictions, including limiting lifting, carrying, pushing and pulling to 10 pounds or less, no repetitive lifting, no crawling, kneeling, or squatting, limiting walking to 2-3 hours a day intermittently, rare bending and twisting at the waist, and the ability to sit and stand as needed. *Id.*

In May 2011, plaintiff underwent a functional capacity evaluation performed by occupational therapist Steve Briansky. R. at 385-94. Mr. Briansky opined that plaintiff was in the "sedentary" category for lifting and carrying. *Id.* at 387, 389. Mr. Briansky further found that plaintiff could squat on an occasional basis, should avoid activities that require bending, and could walk and stand occasionally for 5-10 minutes at a time and 20 minutes in a one-hour time period. *Id.* at 388.

In July 2011, plaintiff underwent a physical consultative examination by Dr. Thurman Hodge. R. at 399-405. Plaintiff told Dr. Hodge that her level of activity depends on how much pain she is having on a particular day, that she can go to the grocery store but needs help getting the groceries in and out of the basket, can cook simple family meals, and has trouble dressing herself and washing her lower half. *Id.* at 400. Plaintiff stated that she "drives 100% less than she used to" due to spasms, but stated that she drove herself to the consultative examination. *Id.* Plaintiff also stated that she visits family and friends for barbecues, but did not specify the frequency. *Id.* On examination, Dr. Hodge noted that plaintiff had "tenderness" on her left side from L1-S1, had no abnormality of the cervical spine, no abnormality of range of motion of the lumbar or thoracic spine, and had a positive straight leg raise on the right. *Id.* at

402. Dr. Hodge found no atrophy of the lower extremities, and normal motor, sensation, reflexes and pulses in the upper extremities. *Id.* Plaintiff also had 5/5 strength in all muscle groups bilaterally. *Id.* at 403. Plaintiff was unable to bend, "stating she had too much low back pain," *id.*, but Dr. Hodge noted that plaintiff "was observed to get up and out of the waiting room chair and got on and off the exam room table without any difficulty." *Id.* Plaintiff reported to Dr. Hodge that she could squat partially, but had too much low back pain to do a deep squat. *Id.*

Dr. Hodge noted that it was "difficult to determine whether or not [plaintiff] gave a full effort" given the discrepancy between the pain she reported in her low back and the results of his physical examination. R. at 403. Whereas plaintiff reported "chronic, severe low back pain," the "exam indicated more mild pain and no spasm." *Id.* Dr. Hodge concluded that his findings supported plaintiff's claimed symptoms "with the exception of the severity" and that "it appears that [plaintiff] can actually stand or walk longer than she stated." *Id.* Dr. Hodge opined that in an eight-hour day, plaintiff could sit for eight hours, stand and walk for four hours, bend occasionally, carry 10 pounds for short distances, could converse, travel independently, and do daily activities and repetitive motions, but could not squat or crawl. *Id.* at 403-4.

In July 2011, State agency physician Alan Ketelhohn reviewed the record and opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. R. at 84-85. Dr. Ketelhohn further limited plaintiff to occasional climbing, stooping, kneeling, crouching, and crawling, and opined that plaintiff should

avoid exposure to temperature extremes and work hazards such as unprotected heights and operating machinery.  *Id.*

During follow-up visits in August, September, October, and November 2011, Ms. Homberger noted that plaintiff was in no acute distress, was alert and oriented, and had a normal gait.  R. at 429-34, 436-41.  Plaintiff reported that her pain fluctuated from 7 to 10 on a 1-10 scale during this time.  *See id.*  Plaintiff had limited range of motion in her back during examinations in August, September, and October (*see id.* at 440, 433, 431, 438), but full range of motion in November.  *Id.* at 436.

In October 2011, an MRI of plaintiff's lumbar spine showed "no evidence of nerve root impingement" or "cauda equina compression" and "mild degenerative changes of the L3-4 disk space without posterior disk bulge or herniation."  R. at 415.  The remainder of the findings of the MRI were normal and showed no changes from plaintiff's previous MRI.  *Id.* at 416.

On December 6, 2011, plaintiff was examined by Dr. Thomas Johnson, who noted that plaintiff "needs a letter for her attorney to state whether she is disabled. [Plaintiff] is trying social security disability."  R. at 426.  Plaintiff had seen Dr. Johnson in "2003 or earlier," at which time she was healthy without disabilities.  *Id.*  Plaintiff reported to Dr. Johnson that she "'stays high' all day long on her medications so she can not drive a vehicle to work."  *Id.*  In his physical examination of plaintiff, Dr. Johnson noted that plaintiff was alert and in no acute distress, and that she was sitting "for the most part of 30 minutes in a chair and on the exam table."  *Id.* at 428.  Dr. Johnson noted that plaintiff did not require an assistive device to walk, and had a normal gait.  *Id.*  Dr. Johnson further found normal strength in the grip and upper extremities, but that

plaintiff could not elevate her left knee or either foot. *Id.* In a listing questionnaire completed in December 2011, Dr. Johnson opined that plaintiff is "totally disabled and unable to get employment or continue employment." *Id.* at 412.

### *1. Whether Plaintiff Meets or Medically Equals a Listing*

Plaintiff argues that the medical records "clearly support" that plaintiff meets the elements of Listing 1.04A and C and that the ALJ should have employed a medical expert to opine on the issue of medical equivalence. Docket No. 17 at 26.

Listing 1.04A requires that a claimant demonstrate a disorder of the spine resulting in compromise of the nerve root or the spinal cord, with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Listing 1.04. Listing 1.04C similarly requires a disorder of the spine resulting in compromise of the nerve root or the spinal cord, with "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]" *Id.*

Plaintiff's argument consists of fourteen single-spaced pages of excerpted medical records (with sporadic bolding) that plaintiff claims clearly demonstrate that she meets either listing 1.04A or C. Plaintiff does not point to any specific evidence that invalidates the ALJ's findings. The ALJ found that Dr. Johnson's report, which said that plaintiff exhibited "some subparts" of Listing 1.04, was not supported by objective medical evidence, which included two imaging reports. R. at 26. The ALJ further

explained that he placed greater weight on the opinion of the State agency reviewing physician because it was consistent with the objective evidence. *Id.* at 26. Plaintiff does not address these specific findings. Plaintiff, therefore, does not argue that the ALJ's finding is not supported by substantial evidence, but instead asks the Court to reweigh the evidence and to overrule the ALJ's finding. This is beyond the Court's purview on an appeal of a final decision of the Commissioner. *Flaherty*, 515 F.3d at 1070.

### 2. *Weighing Medical Evidence and Source Opinions*

Plaintiff argues that the ALJ improperly weighed several medical source opinions in determining plaintiff's RFC. Docket No. 17 at 28-31. The Court addresses each of plaintiff's arguments in turn.

Plaintiff first argues that the ALJ was not permitted to afford Dr. Polanco's opinion less than controlling weight because it relied on plaintiff's subjective reports. Docket No. 17 at 29. The Court disagrees. The ALJ noted that, after Dr. Polanco returned plaintiff to sedentary duties, he added new limitations on three different occasions, and that those limitations were added in response to plaintiff's subjective statements, not due to any change in Dr. Polanco's objective findings. R. at 30. Plaintiff does not point to any objective findings that support these further restrictions. The ALJ is entitled to discount the opinions of treating physicians that rely heavily on a claimant's subjective claims of pain. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (affirming rejection of treating physician's opinion where "the ALJ concluded that Dr. Fanning's opinion rested heavily on [the claimant's] subjective assertions of pain as opposed to objective medical evidence").

Plaintiff argues that the ALJ erred in giving Dr. Hodge's opinion greater weight than that of Dr. Polanco because Dr. Hodge's conclusion concerning plaintiff's ability to bend occasionally was inconsistent with his observations that plaintiff was unable to bend. Docket No. 17 at 30. The Court sees no such inconsistency. Dr. Hodge noted that plaintiff reported that she had too much low back pain to bend, but that he observed plaintiff "get[ting] up and out of the waiting room chair and [getting] on and off the exam room table without any difficulty." R. at 403. Dr. Hodge also opined that it was "difficult to determine whether or not [plaintiff] gave a full effort" because she complained of severe pain "even though the exam was not impressive." Thus, the Court finds that the ALJ did not err in giving Dr. Hodge's opinion partial weight.

Plaintiff next argues that the ALJ erred in rejecting the functional assessment of Mr. Briansky, an occupational therapist. Docket No. 17 at 30. The ALJ found that Mr. Briansky's evaluation, like Dr. Polanco's, placed too much emphasis on plaintiff's subjective complaints. R. at 31 (noting that Mr. Briansky "based his restrictions on the amount of time the claimant was able to perform certain activities before she complained of increased pain"); *see also id.* at 403. Plaintiff argues that Mr. Briansky's assessment "was precisely what an occupational therapist is tasked to do," Docket No. 17 at 30, but does not point to the objective findings that support Mr. Briansky's conclusions. *See id.* The Court finds that the ALJ's conclusion that Mr. Briansky's opinion was entitled to limited weight is supported by substantial evidence. Moreover, Mr. Briansky, an occupational therapist, is classified as an "other source" from which evidence can be considered to show the severity of a claimant's impairment and how it affects her ability to work. 20 C.F.R. § 416.913(d); *see also* SSR 09-2P, 2009 WL

396032 at *3 (Feb. 18, 2009) (listing occupational therapist as an example of "other medical sources who are not 'acceptable medical sources'"). "Opinion evidence from 'other sources' is evaluated using the factors outlined in 20 C.F.R. § 416.927(d), as explained in further detail in Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006)." *Conger v. Astrue*, 453 F. App'x 821, 824 (10th Cir. 2011).[1] The ALJ is not required to discuss each factor outlined in 20 C.F.R. § 416.927(d), *id.* at 825, or explain the reasons for the weight given to "other sources." *Id.* Nonetheless, the ALJ explained that she gave limited weight to Mr. Briansky's assessment, in part because of Mr. Briansky's reliance on plaintiff's subjective complaint and in part based on observations from other examiners that plaintiff appeared to have greater capacity on casual observation than during evaluation. R. at 31.

Finally, regarding Dr. Johnson's opinion, the ALJ noted that Dr. Johnson did not mention having reviewed other medical records; found that plaintiff had a normal gait, normal strength, and symmetrical reflexes; and relied in large part on plaintiff's subjective reports rather than his own clinical findings. R. at 32. Based on Dr. Johnson's objective findings, the ALJ gave no weight to his opinion that plaintiff was totally disabled. *Id.* Plaintiff argues that Dr. Johnson's opinion was "in line with the evidence from [plaintiff's] other treating sources." Docket No. 17 at 30-31. This conclusory assertion, however, is not sufficient to call the ALJ's finding into question.

---

[1] The factors include: (1) the length of time the source has known the claimant and how frequently the source has seen the claimant; (2) the consistency of the source's opinion with other evidence; (3) whether there is relevant evidence to support the opinion; (4) how well the opinion is explained; (5) the source's qualifications; and (6) any other factors that tend to support or detract from the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).

13

The Court finds that the medical evidence of record constitutes substantial evidence of the ALJ's RFC finding.

### 3. The ALJ's Credibility Determination

Plaintiff argues that the ALJ's finding that plaintiff's subjective complaints were not credible is not supported by substantial evidence. Docket No. 17 at 31-35. "Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are "supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations may not be conclusory, but must be "closely and affirmatively linked" to evidence in the record. *Id.* However, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations omitted). The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for

>relief of pain or other symptoms;
>
>6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). "Because a credibility assessment requires consideration of all the factors 'in combination,' when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support" the credibility determination. *Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)). In addition, the Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

### a. Medication and Treatment

Plaintiff argues that the ALJ's finding that plaintiff's pain "has been managed conservatively" mischaracterizes the record. Docket No. 17 at 32 (citing R. at 29). Plaintiff notes that the so-called conservative treatment failed, which resulted in surgery. *Id.* at 32. Plaintiff also notes that, in February 2011, she discussed chronic pain options, including the placement of a spinal cord stimulator, with Dr. Sung. *Id.*

15

The ALJ noted plaintiff's May 2010 surgery and based her finding regarding pain management on the fact that plaintiff's treatment, with the exception of that surgery, was conservative. *See* R. at 29. The evidence of conservative treatment that the ALJ cited included notes from plaintiff's post-surgery follow-up appointments, where plaintiff was given pain medication and a back brace. *See* R. at 254. Moreover, while plaintiff notes that she discussed more aggressive treatment such as a spinal cord stimulator with Dr. Sung, Dr. Sung simply states that he "briefly mentioned" the spinal cord stimulator and other chronic pain options to plaintiff, but wrote that he would "rather [plaintiff] do what she is doing at this point." R. at 295. Indeed, as noted by the ALJ, Dr. Sung's treatment notes repeatedly recommend conservative treatment. *See id.* at 297 (recommending physical therapy), 299 (instructing plaintiff to wear her back brace as directed), 298 (noting that plaintiff can discontinue using a brace and start water therapy).

Plaintiff also argues that the ALJ incorrectly found that plaintiff never reported her complaints that medication made her feel "high" and sleepy to her treaters. Docket No. 17 at 33-34. Plaintiff points out that she reported to PA Homberger that "Vicodin did not work and Dilaudid was too strong," and that plaintiff had an aspirin allergy and has a reaction to anti-inflammatories. *Id.* (citing R. at 447). This testimony about past medications that were ineffective or produced side effects does not contradict the ALJ's finding that plaintiff did not report the specific side effects of the medications she was taking – that they made her "high" and sleepy – until her disability evaluation. R. at 29. The ALJ also noted that the claimed side effects were at odds with numerous treatment

16

records that consistently described plaintiff as awake and alert. *Id.*[2] The court finds that the ALJ's findings as to plaintiff's course of treatment are supported by substantial evidence.

### b. Daily Activities

Plaintiff argues that the ALJ improperly found that her activities were inconsistent with her claims of debilitating pain. Docket No. 17 at 35. The ALJ noted that plaintiff was able to go to a grocery store, testified that she enjoyed barbeques with family and friends, drove herself to an examination, let pets in and out of the house, did laundry once a week, shopped for clothes and food on a monthly basis, and rode in an RV from Colorado to Louisiana for six weeks to attend a family reunion. R. at 29-30.

Plaintiff cites *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), for the proposition that "sporadic performance [of daily activities] does not establish that a person is capable of engaging in substantial gainful activity." *Id.* at 516-17. Plaintiff is correct that the evidence that the ALJ cited does not, by itself, establish that she is capable of working. "However, it does not necessarily follow that [evidence of sporadic activities] are not *substantial evidence* supporting the ALJ's credibility determination." *Howard v. Astrue*, 2011 WL 6151408 at *5 (D. Kan. Dec. 11, 2011). Here, the ALJ cited evidence of plaintiff's activities to rebut specific claims that plaintiff made about her "extreme limitations." R. at 29. Specifically, the ALJ noted that plaintiff testified that she was "unable to assist with any household chores" and could not drive, but found that her

---

[2] *See also* R. at 329 (plaintiff "is alert and oriented times three"), 334 (same), 337 (same), 339 (same), 341 (same), 401 (plaintiff "was alert, affable, cooperative, and answered appropriately"), 428 ("Constitutional: alert").

testimony that she let pets in and out of the house, did laundry, and drove to an examination contradicted plaintiff's testimony about her extreme limitations. *Id.* at 29. Similarly, the ALJ's reference to plaintiff shopping for clothes and food on a monthly basis was in response to her claim, on the same function report, that she was unable to sit for more than 10 minutes or stand for more than 5 minutes. *Id.* at 29-30; *see also id.* at 203 ("Not able to sit for more th[a]n 10 minute at a time[.]  Can not stand for more than 5 minutes[.]"), 206 (indicating that plaintiff shops "monthly" and that it takes "hours").  The ALJ also pointed out that plaintiff did not report being "bedridden" to any treating source, and that there are no "findings of atrophy as would be expected with such a limited lifestyle, and the evidence fails to show that the decision to remain prone throughout the day is medically compelled." *Id.* at 30.  While "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain," *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), the ALJ has not done so here.  Rather, the ALJ used those activities as evidence that plaintiff's "statements regarding her limitations are incredible."  R. at 30.  The Court finds that the ALJ's findings as to plaintiff's daily activities are substantial evidence that support the ALJ's finding that plaintiff's subjective complaints are not credible.  *See Reed v. Colvin*, 2014 WL 4639905 at *3 (D. Kan. Sept. 6, 2014) (holding that the ALJ's findings regarding daily activities were supported by substantial evidence where "the ALJ's findings related to the issue of [p]laintiff's credibility rather than to his ability to work").

### c.  Other Factors

Plaintiff argued that the ALJ erred in considering Dr. Hodge's observation that plaintiff was able to walk to and from the parking lot and around the examination room

without difficulty because there is no indication in Dr. Hodge's treatment note of the distances that plaintiff was able to walk. Docket No. 17 at 33. The ALJ, however, noted that, despite this discrepancy, she considered Dr. Hodge's other records of plaintiff's pain, muscle tightness, and variable range of motion in assessing plaintiff's RFC, and only cited the discrepancy with regard to plaintiff's "assertion of total debility." R. at 28-29. The Court finds that, like the ALJ's analysis of plaintiff's daily activities, the observation of the discrepancy in Dr. Hodge's treatment note is substantial evidence for the specific finding for which it was cited.

In sum, the Court finds that the ALJ's credibility determination is "closely and affirmatively linked" to evidence in the record, *Kepler*, 68 F.3d at 391, and is therefore supported by substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Diane L. Coxen Williams is not disabled is **AFFIRMED.**

DATED March 30, 2015.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge